## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALBERT COX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-375** |
| **STATE OF LOUISIANA,** | **SECTION "G"(4)** |
| **WARDEN N. BURL CAIN** | |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. ***See* 28 U.S.C. § 2254(e)(2)**.[1]

## I.   Factual and Procedural Background

Petitioner Albert Cox ("Cox") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On January 14, 2016, Cox was indicted by a Jefferson Parish Grand Jury for the second degree murder of Cornell Woods and for being a felon in possession of a weapon.[3] Cox entered a plea of not guilty to the count against him on January 15, 2016.[4]

The record reflects that,[5] on October 7, 2015, Woods and Leroy Cage were "hanging out" after work in the Susan Park neighborhood in Kenner, Louisiana, where they lived. The two men

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] ECF No. 1.

[3] St. Rec. Vol. 1 of 11, Indictment, 1/14/16; *id*., Grand Jury Return, 1/14/16.

[4] *Id*., Minute Entry, 1/15/16.

[5] The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Cox*, 239 So. 3d 465, 469-71 (La. App. 5th Cir. 2018); St. Rec. Vol. 6 of 11, 5th Cir. Opinion, 17-KA-508, at 2-4, 2/21/18.

were sitting in Woods's truck in front of Cage's house on Tupelo Street.  At some point, Cox known as "Wayne" in the neighborhood, approached Woods on the driver's side.  Cox pointed his finger at Woods and referred to him as a "bitch."  Woods and Cage exited the truck and Woods then called Cox a "bitch."  Cox then told Woods, "Whenever I walk down, I'm going to pistol whip you."[6]  Cox then walked away towards 27th Street apparently heading towards his house on Jasper Street.  Cage had known Cox his whole life, so he tried to deescalate the situation.  He told Woods not to worry about "that fool," and they too went home.[7]

Sometime later, Cage took his dog for a walk in the neighborhood.  He saw Cox walking down the street and greeted him.  Cox ignored Cage and kept walking in the direction of Woods's house.  Cage noticed that Cox, who had earlier been wearing a white t-shirt and blue shorts, was now dressed in all black and had one hand in his pocket.  Cage telephoned Woods to let him know that Cox was heading his way.  Woods replied that he was not "worried about that fool."[8]

After Cage hung up, he walked into the street and saw Cox about three and a half blocks away by that time.  Cage saw Cox cross to the middle of the street near Woods' house where he started shooting.  Cage could not see Cox's face, but he heard four shots and could see the fire from the gun.  Cage called 9-1-1 and went back into his house, where he told his wife that "Wayne just shot Cornell."  Cage then drove to Woods's house.

Based on the 9-1-1 call, officers from the Kenner Police Department responded to the scene.  Detective Devin Diedling arrived and found Woods lying face up, breathing sporadically,

---

[6] *Cox*, 239 So. 3d at 470.
[7] *Id*.
[8] *Id*.

with an apparent gunshot wound to his chest. Woods was transported to the hospital where he later died from his injuries.

Based on their investigation and information received from Cage, Detective Vincent Miranti compiled a photographic lineup from which Cage positively identified Cox as the individual he knew as "Wayne." Detective Miranti also received calls from Cox's cousins Laquittia Davis and Keokuk Davis. Laquittia told Detective Miranti that Cox called her on October 8, 2015, and told her that he shot Woods. Keokuk stated that Laquittia called him after speaking with Cox. He then spoke to Cox and Cox confirmed to him that what he told Laquittia was true. Rene Cox, another cousin, went to the Kenner Police Department and reported to Sergeant Jeff Adams that Cox had called her to tell her that he had killed someone.

Following the investigation, Detective Miranti secured an arrest warrant for Cox. On October 8, 2015, Cox was located and arrested by U.S. Marshals at the Baton Rouge bus station and returned to Jefferson Parish Correctional Center.

After being found competent to assist in his defense, Cox was tried before a jury on December 5 through 7, 2016.[9] The jury was unable to reach a verdict and the matter ended in a mistrial.[10] Cox was later tried by a jury on April 10 through 12, 2017, and found guilty as charged by a unanimous verdict on both counts.[11] On April 19, 2017, the state trial court denied Cox's

---

[9] St. Rec. Vol. 1 of 11, Competency Hearing Minutes, 6/22/16; *id.*, Trial Minutes, 12/5/16; *id.*, Trial Minutes, 12/6/16; *id.*, Trial Minutes, 12/7/16; *see also*, *id.*, Motion for Sanity Commission, 5/4/16; *id.*, Trial Court Order, 5/4/16; St. Rec. Vol. 2 of 11, Hearing Transcript, 6/22/16.

[10] St. Rec. Vol. 1 of 11, Trial Minutes, 12/7/16.

[11] *Id.*, Trial Minutes, 4/10/17; *id.*, Trial Minutes, 4/11/17; *id.*, Trial Minutes, 4/12/17; *id.*, Jury Verdict, 4/12/17; St. Rec. Vol. 3 of 11, Trial Transcript, 4/10/17; St. Rec. Vol. 4 of 11, Trial Transcript (continued), 4/10/17; St. Rec. Vol. 5 of 11, Trial Transcript (continued), 4/10/17; *id.*, Trial Transcript, 4/11/17; St. Rec. Vol. 6 of 11, Trial Transcript (continued), 4/11/17; *id.*, Trial Transcript, 4/12/17.

motions for new trial and for post-verdict judgment of acquittal.[12]  On April 19, 2017, the state

trial court sentenced Cox to life in prison for count one and fifteen years in prison at hard labor for

count two, both sentences to be served consecutively without benefit of parole, probation, or

suspension of sentence.[13]  The court also denied Cox's motion to reconsider the sentences.[14]

On direct appeal, Cox's appointed counsel asserted two errors: [15] (1) it was an error for the

trial court to prohibit Cox from producing evidence regarding his mental state/deficiencies at the

time of his confessions, which effectively denied his rights to confrontation and to present a

defense; and (2) the state trial court erred by allowing the State to introduce evidence of his prior

convictions.  Cox filed a Supplemental Appeal Brief in which he argued the following:[16] (1) the

evidence was insufficient to support the verdict of second degree murder; (2) the state trial court

erred by denying the motion for acquittal and motion for new trial; (3) the state trial court violated

petitioner's Sixth and Fourteenth Amendment rights when it failed to comply with La. Code Crim.

Proc. art. 811 to receive and record the jury verdict; and (4) the state trial court failed to comply

with La. Code Crim. Proc. art. 894.1 when imposing the sentences.

On February 21, 2018, the Louisiana Fifth Circuit affirmed Cox's convictions and

sentences finding no merit in the claims and also finding review of the final *pro se* claim was

precluded from review on appeal.[17]

---

[12] St. Rec. Vol. 1 of 11, Motion for New Trial, 4/18/17; *id.*, Motion for Acquittal Notwithstanding the Verdict, 4/18/17; *id.*, Trial Court Order, 4/19/17; *id.*, Trial Court Order (2), 4/19/17; *id.*, Sentencing Minutes, 4/9/17; St. Rec. Vol. 6 of 11, Sentencing Transcript, 4/19/17.

[13] St. Rec. Vol. 1 of 11, Sentencing Minutes, 4/9/17; St. Rec. Vol. 6 of 11, Sentencing Transcript, 4/19/17.

[14] St. Rec. Vol. 1 of 11, Sentencing Minutes, 4/19/17; *id.*, Motion to Reconsider Sentence, 4/18/17; Trial Court Order (3), 4/19/17.

[15] St. Rec. Vol. 6 of 11, Appeal Brief, 17-KA-0508, 10/11/17.

[16] *Id.*, Supplemental Appeal Brief, 17-KA-0508, 11/27/17.

[17] *Cox*, 239 So. 3d at 469-71; St. Rec. Vol. 6 of 11, 5th Cir. Opinion, 17-KA-508, at 2-4, 2/21/18.

On January 14, 2019, the Louisiana Supreme Court denied Cox's related writ application without stated reasons.[18]  Cox's convictions and sentences were final 90 days later, on Monday,[19] April 15, 2019, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Almost seven months later, on November 6, 2019, Cox signed and submitted an application for post-conviction relief to the state trial court asserting that his counsel failed to investigate his mental health history.[20]  After receiving additional briefing,[21] on May 9, 2018, the state trial court denied relief finding Cox's claim meritless under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and related case law.[22]

On April 7, 2020, the Louisiana Fifth Circuit denied Cox's related writ application finding no error in the trial court's ruling based on *Strickland*.[23]  On October 20, 2020, the Louisiana Supreme Court also denied Cox's writ application holding that he failed to prove ineffective assistance of counsel under *Strickland*.[24]

---

[18] *State v. Cox*, 261 So. 3d 782 (La. 2019); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2018-KO-0455, 1/17/19; *id*., La. S. Ct. Writ Application, 18-KO-455, 3/22/18 (dated 3/6/18).

[19] The ninetieth day was Sunday, April 14, 2019, causing the last day of the period to fall to the next business day, Monday, April 15, 2019.  *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

[20] St. Rec. Vol. 8 of 11, Application for Post-Conviction Relief, 11/13/19 (dated 11/6/19); *id*., Memorandum in Support, 11/13/19 (dated 11/6/19).

[21] *Id*., State's Opposition, 11/25/19; *id*., Trial Court Order, 11/19/19; St. Rec. Vol. 9 of 11, Objection to State's Opposition, 12/17/19.

[22] St. Rec. Vol. 9 of 11, Trial Court Order, 2/10/20.

[23] *Id*., 5th Cir. Order, 20-KH-92, 4/7/20.

[24] *State v. Cox*, 303 So. 3d 301 (La. 2020); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2020-KH-00657, 10/20/20; St. Rec. Vol. 11 of 11, La. S. Ct. Writ Application, 2020-KH-657, 4/24/20 (efiled 4/24/20).

## II.    **Federal Petition**

On February 18, 2021, the clerk of this Court filed Cox's federal petition for habeas corpus relief in which he asserted two grounds for relief:[25] (1) it was an error for the state courts to deny relief on his claim that his counsel was ineffective for failing to investigate his mental health history to prove to the jury that he could not distinguish right from wrong at the time of the crime; and (2) the state trial court erred by prohibiting him from producing evidence of his mental state when he gave statements to police.

The State filed a response in opposition asserting that Cox's claims are without merit and denial of relief by the state courts was not contrary to or unreasonable application of federal law.[26] Cox filed a reply to the State's opposition in which he reiterated his arguments in support of relief.[27]

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[28] applies to Cox's petition, which is deemed filed in this Court under the mailbox rule on February 18, 2021.[29]    The threshold questions on habeas review under the

---

[25] ECF No. 1 at 5; ECF No. 1-1, at 3, 9.

[26] ECF No. 14.

[27] ECF No. 15.

[28] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[29] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Cox's pleadings indicate that he delivered the petition and related pleadings to the prison legal department on February 18, 2021, for electronic delivery to this court, which was done the same day. ECF No. 1-1, at 1.

amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Cox's federal petition was timely filed under the AEDPA and that he has exhausted state court review of his claims. The State argues, however, that Cox is not entitled to federal habeas relief on his claims, and his petition should be dismissed with prejudice for that reason.

## IV.    Standards of a Merits Review

The standard of review under the AEDPA is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.

*Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.      <u>Effective Assistance of Counsel</u>

Broadly construing the pleadings, Cox alleges that his counsel denied him effective assistance when counsel failed to adequately investigate his mental state and social history in an effort to convince the state trial court and the jury that Cox suffered from mental illness that kept him from understanding right from wrong when the crime was committed. He claims that his counsel instead argued to the state trial court that she should be allowed to cross-examine his family members with regard to his communication skills. This failure to investigate, he claims, deprived him of the ability to rebut the presumption under state law that he was sane at the time of the incident.

Cox asserted these arguments on post-conviction review in the state courts. In the last reasoned decision, the Louisiana Supreme Court denied relief finding that he failed to meet his burden of proof under *Strickland*.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving

ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88; *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020).  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . .  counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'")

(quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Andrus*, 140 S. Ct. at 1881; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. To determine whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas

> courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789

(5th Cir. 2010). The Court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

Cox has failed to meet the doubly-deferential burden under the AEDPA and *Strickland* to prove his entitlement to federal habeas relief. A habeas petitioner like Cox cannot show deficient performance or prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696). To prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005). Cox has offered no evidence or information to establish what further investigation into his mental health and social behavior history would have revealed or that it would have altered the outcome of his trial. Significant to his claims, he has offered nothing to establish that he suffered from a mental condition that prevented him from distinguishing right from wrong when the murder occurred. His arguments, as noted by the state courts, are purely speculative and conclusory, which is insufficient to meet his burden under *Strickland*.

In addition, Cox's counsel developed concerns for Cox's competence long before the first trial. On May 4, 2016, counsel moved for a sanity commission review of Cox's intellectual abilities based on her assessment of Cox's illiteracy and his history of receiving a check for his intellectual disabilities since childhood.[30] Competency to assist counsel is, however, different from an insanity or diminished capacity defense.[31]

---

[30] St. Rec. Vol. 1 of 11, Motion for Sanity Commission, 5/4/16.
[31] *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (competency questions whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as a factual understanding of the proceedings against him.").

In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense. La. Rev. Stat. Ann. § 15:432; *State v Silman*, 663 So. 2d 27, 32 (La. 1995). To rebut the presumption of sanity and avoid criminal responsibility, a defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. Code Crim. Proc. art. 652. The insanity defense is defined by La. Rev. Stat. Ann. § 14:14:

> If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

The decision by counsel whether to present an insanity defense is a matter of trial strategy. *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005) (citations omitted). In evaluating counsel's decision regarding an insanity defense, the courts are reminded that "the insanity defense involves case by case determinations of fact and will often fail even if raised and even where some indications of irrationality exist." *McInerney*, 919 F.2d at 353.

Thus, to establish ineffective assistance of counsel for failing to assert an insanity defense or to advise the client to enter a plea of not guilty and not guilty by reason of insanity, petitioner must show that his counsel had some *real* indication that a mental impairment was a viable defense to the crime charged. *Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987). It is not enough for a habeas petitioner simply to offer the speculative possibility of a successful insanity plea and defense. *Long v. Krenke*, 138 F.3d 1160,

1162 (7th Cir. 1998).  In this case, Cox has failed to identify any legitimate basis for his attorney to have pursued an insanity defense.

Under Louisiana law, "[c]riminal responsibility is *not* negated merely by the existence of a mental disease or defect."  (emphasis added) *State v. Williams*, 346 So. 2d 181, 186 (La. 1977). A mental disease or disorder short of legal insanity is insufficient to support an insanity defense. *Id.*; *State v. Koon*, 704 So. 2d 756, 768 (La. 1997); *State v. Weber*, 364 So. 2d 952, 956 (La. 1978). In addition, evidence of anger and emotional provocation is not admissible to establish insanity in Louisiana.  *See State v. Pitre*, 901 So. 2d 428, 444 (La. App. 1st Cir. 2004) ("[E]vidence of a mental disease or defect affecting defendant at the time of an offense is inadmissible, whether it is an organically caused mental condition or a psychologically or emotionally induced mental condition.").  Because of this heavy burden, counsel is not ineffective for failing to assert insanity as a defense when the facts and record contain no indication or evidence that the petitioner had a mental disorder that rendered him insane, as defined above, at the time of the offense. *Johnson v. Cain*, 548 F. App'x 260, 261 (5th Cir. 2013); *Byrne*, 845 F.2d at 513.

Cox did not provide the state courts or this federal habeas court with any evidentiary support for his claim that he was mentally impaired at the time he committed the murder, much less that he was so significantly impaired as to have been incapable of distinguishing between right and wrong with respect to his criminal conduct.  In the absence of such evidence, it is clear that he failed to meet his burden to prove that counsel performed deficiently in failing to pursue an insanity defense or that any prejudice resulted from counsel's strategic decisions.  *See Otero v. Louisiana*, No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); s*ee also Mack v. Warden, Louisiana State Penitentiary*, No. 11-0735, 2012 WL 702396, at *4 (W.D. La. Jan. 30, 2012),

*report adopted*, 2012 WL 704831 (W.D. La. Mar. 1, 2012); *Morgan v. Cain*, No. 05-6479, 2007 WL 3025056, at *7-8 (E.D. La. Oct. 15, 2007) (Order adopting Report and Recommendation).

Cox also has not established that his counsel failed to consider his mental health in developing a defense strategy.  As Cox recognizes, his counsel made a point prior to trial to argue in the motion *in limine* that information about his inept communication skills and odd behavior over his lifetime, while not indicative of insanity, was enough to establish why his relatives may have been prejudiced against him and went to such great efforts to report his guilt to the police.[32] As determined by the state courts, Cox's counsel clearly evaluated Cox's prior behavioral issues and apparently resolved that it did not meet Louisiana's high standards to support an insanity defense.

His counsel's decision to not pursue a baseless insanity defense was reasonable under the circumstances of Cox's case.  *See Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."); *Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client").  "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical.  If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade."  *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984).

Cox failed to present any support for his claims of deficient performance or prejudice resulting from his counsel's alleged failure to further investigate or pursue an insanity defense.  As

---

[32] *See*, St. Rec. Vol. 2 of 11, Hearing Transcript, 11/17/16.

concluded by the state courts, he failed to meet either prong of the *Strickland* standard.  Thus, Cox has not shown that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*.

## VI.    State Evidentiary Ruling

Cox alleges that the state trial court erred by prohibiting him from presenting evidence or cross-examining witnesses regarding his mental limitations when he made inculpatory statements to his family members.  He claims that this also effectively denied his rights to confrontation and to present a defense.  Cox's appointed counsel asserted this claim on direct appeal, and it was found meritless by the state courts.

In the last reasoned opinion on the issue, the Louisiana Fifth Circuit found no error in the state trial court's evidentiary ruling and specifically held that Cox's "constitutional rights to present a defense and to confront and cross-examine witnesses were not violated by the trial court's exclusion of evidence relating to defendant's mental limitations at the time of his incriminating statements to his relatives."[33]  The court found that, because Louisiana does not allow a defense short of insanity, the evidence of any mental deficiency less than insanity was not admissible.[34] The court also held that because of this, Cox could not show that the exclusion of the evidence was relevant and material to his defense.  In addition, Cox suffered no prejudice because he was in fact allowed "to inquire about the circumstances of the calls and the witnesses' perceptions of his state during his calls."[35]

---

[33] *Cox*, 239 So. 3d at 474-75.
[34] *Id*. at 473.
[35] *Id*. at 474.

To the extent Cox asserts that the state trial court violated or misapplied state evidentiary rules, his claim must fail. Federal habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010); *Lampton v. Cain*, 268 F. App'x 367, 368 (5th Cir. 2008) (citing *Jernigan*, 980 F.2d at 298). States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process is a manner to render the criminal proceeding fundamentally unfair. *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of St. of Cal.*, 314 U.S. 219, 236-37 (1942)); *see Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are not cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

In an effort to show an unconstitutional unfairness, Cox argues that the state court's evidentiary ruling led to the denial of his confrontation rights and his right to present a defense. These arguments were also found meritless by the state courts, and he has not demonstrated that

the denial of relief was contrary to federal law.[36]  The Supreme Court has held that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citations omitted)); *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).  The rights of an accused have been adequately protected if he has been given the opportunity to present his defense, to cross-examine witnesses, and to present testimony.  *See Washington v. Texas*, 388 U.S. 14, 20 (1967); *Pointer v. Texas*, 380 U.S. 400 (1965); *In re Oliver*, 333 U.S. 257, 273-74 (1948).

The Constitution, however, does not guarantee the right to introduce all evidence the defendant deems relevant, because the right to present even relevant evidence is not unfettered or "absolute."  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  The Supreme Court has "[o]nly rarely [. . .] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."  *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citations omitted).  Broad latitude is granted to states to establish rules excluding evidence from criminal trials.  *Holmes*, 547 U.S. at 324; *Jackson*, 569 U.S. at 509.  The right to present a complete defense is not "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor*, 484 U.S. at 410.

---

[36] The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact.  *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *Tyson v. Trigg*, 883 F. Supp. 1213, 1218 (S.D. Ind. 1994).  Under the applicable standard of review, this court therefore must determine whether the state courts' decisions are contrary to or involve an unreasonable application of Supreme Court precedent.

This court's first inquiry is whether Cox had a legitimate or viable defense to assert based on his mental state while talking with his relatives. He did not. As concluded by the state courts, and discussed above, Louisiana does not allow a defendant to present evidence of a mental disease or disorder short of legal insanity as a defense to his criminal conduct. *Williams*, 346 So. 2d at 186; *Koon*, 704 So. 2d at 768; *Weber*, 364 So. 2d at 956. Nothing short of legal insanity is recognized as a defense under Louisiana law. *Williams*, 346 So. 2d at 186. Cox was not denied the opportunity to present a recognized legal defense to his actions. He simply was denied the opportunity to present to the jury evidence that was inadmissible and irrelevant under Louisiana law. Cox's claim is insufficient to establish a violation of constitutional right as a result of the state courts' evidentiary ruling.

The second inquiry focuses on whether Cox was denied his confrontation rights through his inability to confront witnesses about his state of mind when he made inculpatory statements. Again, he was not. "[T]he Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (emphasis original) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)); *see also Rizzo v. Smith*, 528 F.3d 501, 506 (7th Cir. 2008). "For the exclusion of evidence to violate this right by denying the accused a fundamentally fair trial, the evidence must be 'material,' in the constitutional sense that it 'creates a reasonable doubt that did not otherwise exist. . .'" *Jimenez v. Walker*, 458 F.3d 130, 146 (2nd Cir. 2006) (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976) ). "'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.' But 'if the verdict is already of questionable validity, additional

evidence of relatively minor importance might be sufficient to create a reasonable doubt.'"  *Id.* at

146-47 (quoting *Agurs*, 427 U.S. at 112-13).

In Cox's case, he cannot show that his inability to ask specific questions about his past

mental health and social behavior prejudiced his defense or denied him the right to confront his

relatives.  As the Louisiana Fifth Circuit recounted, Cox's counsel was in fact able to question

Cox's relatives about his state of mind and demeanor during the various phone calls when he

candidly admitted killing the victim.

> On direct examination, Laquittia testified that on the morning of October 8, 2015,
> she received a phone call from defendant that lasted about fifteen minutes.
> Laquittia stated that defendant sounded sober during their telephone conversation
> although he informed her that he was "getting high."  In response to questioning by
> defense counsel on cross-examination, Laquittia reiterated that defendant told her
> that he was "getting high" and "smoking rocks and getting loaded."  Further,
> Laquittia acknowledged that defendant previously struggled with a drug problem
> and previously "got loaded a lot."  However, when asked, Laquittia maintained that
> defendant was in the right state of mind as he was talking to her on the phone.  On
> re-direct examination, Laquittia responded that defendant was coherent when he
> was talking to her.  In addition, Ms. Cox, who spoke with defendant on the evening
> of October 8, 2015, testified on cross-examination that she was aware of
> defendant's previous drug problem but could not tell whether he was intoxicated
> during their phone conversation.  When asked about defendant's speech, Ms. Cox
> replied, "I can't say he was slurred.  I don't know.  Thus, defense counsel was
> permitted to question these witnesses about the circumstances surrounding their
> phone calls with defendant.

As concluded by the state courts, Cox's counsel was able to question his relatives about his

demeanor on the phone and his soundness of mind during the phone calls.  He was not prevented

from introducing testimony relevant to his defense although the state trial court limited the focus

of the questions, which is allowed by Supreme Court precedent cited above.

The state courts denied relief based on the evidentiary restrictions under state law while

recognizing that the limitations did not violate his constitutional rights to confrontation and to

present a defense.  Cox has not shown that the denial of relief was contrary to or an unreasonable application of Supreme Court law.  He is not entitled to federal habeas relief on this claim.

## VII.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Cox's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[37]

New Orleans, Louisiana, this 22nd day of November, 2021.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[37]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.